# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DEBBY NORMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:12-cv-1288 |
| ) | Judge Sharp |
| METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY, TENNESEE ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is a Motion for Summary Judgment filed by Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metropolitan" or "Defendant"). (Docket No. 13). Plaintiff Debby Norman ("Plaintiff" or "Dr. Norman") brings claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 (the "ADEA"), the Americans with Disability Act of 1990, 42 U.S.C.A. § 12112 (the "ADA"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-301 *et seq.* ("THRA"). Defendant seeks summary judgment on all claims. For the following reasons, Defendant's Motion will be granted.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Debby Norman, now 65 years old, holds a doctorate degree in education and has worked in education for 30 years. (Docket No. 1 at ¶ 6). Dr. Norman worked for Defendant at Hunters Lane High School ("Hunters Lane") as a schoolteacher from August 2002 until her retirement on January 31, 2012. (Docket No. 22-1 at 17:23, 53:10). Plaintiff suffers from osteoporosis and degenerative arthritis, which prevent her from physical activity such as

1

continuous lifting, bending, grasping, twisting, squatting, kneeling, and crawling. (Docket No. 13-1 at 1). Plaintiff's doctor also recommended that while Plaintiff may perform "[f]ull work with sitting," she is to "[l]imit standing and walking" and "[m]ust sit 5-10 minutes every 1 hour." Id. Because of these conditions, Plaintiff has had both of her knees replaced, her right knee in 2006 and her left knee in June 2011. (Docket No. 22-1 at 131:20-132:8). Plaintiff alleges that she kept Hunters Lane apprised of her medical status throughout her tenure. (Docket No. 19 at 2-3; Docket No. 13-1 at 2).

Plaintiff now alleges that "due to her age and disability, she was targeted by her supervisors, thereby creating a hostile work environment" in which she was "denied reasonable accommodations, which are necessary due to her disability, as well as insulted due to her age." (Docket No. 1 at 7). To support these allegations, she points to a number of events occurring during the 2010-2011 and 2011-1012 school years.[1]

For example, Plaintiff believes that she received negative performance evaluations based on her age and disability. (Docket No. 1 at ¶¶ 11, 12; Docket No. 13 at 10). More specifically, Plaintiff received a reprimand on May 26, 2011 (Docket No. 13-1 at 55) and was put on a Plan of Assistance ("POA") on October 26, 2011 (Id. at 3-6). She also received negative feedback during classroom visits. (Id. at 12-27). Plaintiff has not, however, disputed the evidence proffered by Defendant regarding her poor teaching performance. (See, e.g., Docket No. 13-5 at ¶ 6; Docket No. 20 at ¶ 3). Neither has she disputed that she, like all teachers at Hunters Lane, was subject to more evaluations and scrutiny as the result of state legislation. (Docket No. 20 at ¶¶ 7-8).

---

[1] Plaintiff alleges in her EEOC charge that the discrimination dates back to 2009. (Docket No. 13-4 at 7). However, the earliest incident that she describes in her deposition and court filings occurred in May 2011.

The primary ADA accommodation issue that Plaintiff points to relates to her classroom location. The Hunters Lane administration required her to change classrooms from Room 170 to Room 206 before the start of the 2011-2012 school year. Plaintiff asserts that she requested in writing to stay in Room 170 (Docket No. 19 at 4), although she did not include a copy of that request in the record. Plaintiff also stated that she repeatedly asked for help switching materials between classrooms. (Docket No. 22-1 at 66:1-11). However, the record shows only that she sought (and received) permission to have her grandson help her move classrooms. (Docket No. 13-1 at 46). In addition to the difficulties she encountered with the actual move, the new location required Plaintiff to walk farther to get to her classroom, although it is not clear how much distance the change in classrooms added to Plaintiff's daily commute. (Docket No. 22-1 at 74:1-4). Hunters Lane again required Plaintiff to switch classrooms during the fall semester of the 2011-2012 school year. (Docket No. 22-1 at 74:13-17). This time she switched from Room 206 to the classroom next door, Room 204B. Id.

Plaintiff points to several other instances where Hunters Lane allegedly did not accommodate her physical limitations. She notes another occasion where Hunters Lane required her to move materials between classrooms without assistance. (Id. at 68:4-24). But, as Defendant points out, the evidence on the record indicates that Plaintiff did not seek help moving these items. (Docket No. 13-1 at 43, 45). Plaintiff also references an instance where she requested and was denied the chance to opt out of a mandatory scavenger hunt, "which would require walking around school." (Docket No. 19 at 23). The record does not, however, contain any other mention of or evidence regarding this scavenger hunt or Defendant's failure to accommodate Plaintiff's request.

The record does show that Plaintiff received at least some accommodations based on her physical limitations. Specifically, she received "[a]dditional time to arrive at post of duty or meetings" and "[a]ssistance with students going to auditorium or locations." (Docket No. 13-1 at 11). In addition, the Executive Principal, Dr. Susan Kessler, stated that Dr. Norman was "absolutely" welcome to bring her hoveround (a motorized wheel chair) to school and said that she had discussed with Plaintiff "where she could keep it, so that way it would, you know, be safe and available to her." (Docket No. 22-3 at 11, lines 37:23-38:7).

Plaintiff also alleges that her supervisors created a hostile work environment through harassing comments. Plaintiff asserts that Assistant Principal Miriam Harrington ("AP Harrington") remarked to Plaintiff "that some people 'don't know when to retire.'" (Docket No. 1 at ¶ 21). Plaintiff recalls that AP Harrington and another Assistant Principal, William Johnson, also asked her things like "[a]ren't you ready to retire soon?" and "[h]ow old did you say you were?" (Docket No. 22-1 at 36:24-37:10). She characterizes their comments as "badgering" and "intimidating and interrogating," reporting that she "broke down in tears one time." (Id.) The assistant principals allegedly made these comments during their weekly meetings with Plaintiff, which were instituted in the fall of 2011 as part of Plaintiff's POA. (Id. at 37:13-14). During those meetings and pursuant to the POA, the assistant principals also gave Plaintiff feedback on her teaching, including her grading habits and ethics, and directed her to follow the examples of younger teachers. (Docket No. 22-1 at 40:20-50:10). According to Plaintiff, she was not the only person who faced such hostility based on age and ability. She mentioned several other employees who experienced similar treatment, such as being put on POAs, not receiving accommodations, and feeling pressure to retire. (Docket No. 22-1 at 77:14-18, 90:3-92:14).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on December 2, 2011. (Docket No. 13-4 at 7). Plaintiff then retired from Hunters Lane on January 31, 2012. Although Plaintiff did not mention her retirement in her Complaint, she has subsequently addressed her departure in legal filings: "[Plaintiff] was extremely depressed and felt she had to retire. She could not stay, that's how bad it was." (Docket No. 20 at 12). Dr. Norman received her right to sue letter and filed this lawsuit on December 11, 2012 bringing both state and federal claims. (Docket No. 1 at ¶ 23).

Plaintiff did not specify in her Complaint the specific claims she is bringing but instead merely names the statutes under which she is suing, leaving the Court to deduce what theories of liability she seeks to apply. Based on the record, the Court understands Plaintiff to be bringing the following claims: (1) failure to accommodate under the ADA; (2) hostile work environment under the ADA/ADEA; (3) age discrimination under the ADEA; (4) retaliation; and (5) analogous claims under Tennessee law. For the reasons below, none of Plaintiff's claims survive.

## II. STANDARD OF REVIEW

The standards governing summary judgment are well established. A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving

party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. LEGAL ANALYSIS

A.  **ADA Claim for Failure to Accommodate**

Title I of the ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discrimination" includes a refusal to make "reasonable accommodations" for the employee's disability. Id. at 868 (citing 42 U.S.C. § 12112(b)(5)(A)); see also Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997). Plaintiff must therefore "show both that she is disabled and that she requested (and was denied) an accommodation that was reasonable." Allen v. BellSouth Telecommunications, Inc., 483 F. App'x 197, 200 (6th Cir. 2012) (citing Kleiber v. Honda of America Mfg., Inc., 485 F.3d 862, 870 (6th Cir. 2007)).

Defendant does not seem to dispute that Plaintiff's medical diagnosis entitled her to protection under the ADA. Yet even assuming Plaintiff has shown that she is disabled within the meaning of the statute, her claim fails because she has not demonstrated that she actually requested and was denied any accommodations. The only evidence that Plaintiff presents regarding the accommodations she claims to have requested are her own statements from her deposition. Without more, these statements are insufficient to create a genuine issue of material fact. Indeed, the other evidence in this case implies that had Plaintiff actually requested accommodations, there would have been some kind of written record of such requests. For instance, the record includes an ADA accommodation form wherein Plaintiff sought and received an accommodation in the form of additional time to arrive at her post and assistance

6

moving students between locations. (Docket No. 13-1 at 11). Moreover, the record contains a number of emails between Plaintiff and Doctor Kessler wherein Plaintiff makes other requests, such as asking for a meeting or for permission to have her grandson help her switch classrooms. (Docket Nos. 13-1 to 13-4). Plaintiff also asked questions about the timeline for moving the materials, but never once even asked for help doing so, let alone requests an accommodation.

Plaintiff's mere assertions that she requested to remain in the same room and requested help moving materials do not alone adequately demonstrate that she requested an accommodation. See Trepka v. Bd. of Educ., 28 F. App'x 455, 460 (6th Cir. 2002) ( affirming denial of summary judgment and stating: "[Plaintiff] claims that she asked the custodian for assistance once and that he was late in helping her, but we hold that such evidence falls well short of demonstrating that the accommodation was unavailable."). The evidence regarding the scavenger hunt exemption Plaintiff sought is even more scant, as Plaintiff herself did not even remark on it during her deposition. Because Plaintiff has not demonstrated that she even requested an accommodation, her failure to accommodate claim necessarily fails.

**B.      Hostile Work Environment**

In order to maintain a hostile work environment claim an employee must demonstrate that: (1) she is a member of a protected class (e.g., over 40 years old and/or disabled); (2) she was subject to unwelcome harassment; (3) the harassment was based on her membership in the protected class; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant employer either knew or should have known about the harassment and failed to take corrective measures. Trepka, 28 Fed. App'x. at 461 (citations omitted). The Supreme Court has clarified that for a plaintiff to have suffered from a hostile work environment, the plaintiff's workplace must have been "permeated with discriminatory intimidation, ridicule, and insult that

is sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Conduct that is "merely offensive" will not suffice to support a hostile work environment action. Id.

Of the conduct Plaintiff alleges, only the comments by the two assistant principals during their weekly meetings with Plaintiff could possibly be construed as harassment. Those comments pertained to Plaintiff's age, not her physical limitations, meaning that her hostile work environment claim falls within the scope of the ADEA, not the ADA. Regardless of which statute applies, these comments do not rise to the level of a hostile work environment. The assistant principals' questions are "mere offensive utterances as opposed to physically threatening or humiliating conduct." Crawford v. Medina Gen. Hosp., 96 F.3d 830, 836 (6th Cir. 1996) (internal quotation marks omitted). While the questions were "certainly rude, [they are] not enough to create a hostile working environment within the meaning of Harris." Id. Moreover, it seems that much of the conduct that Plaintiff felt has harassing or hostile was unrelated to her age. The bulk of what she discussed during her deposition instead related to the assistant principals' comments about her teaching ability. The few age-based questions that Dr. Norman cites do not rise to the level of severe and pervasive, and the rest of the comments about which Plaintiff complains do not relate to her age. Her hostile work environment claim therefore fails.

**C.     ADEA Claim**

The ADEA bars discrimination because of an employee's age, which means it prohibits discrimination that is a but-for cause of the employer's adverse decision. Newcomb v. Allergy & ENT Associates of Middle Tennessee, P.C., No. 3:10-CV-1230, 2013 WL 1874257, at *9

(M.D. Tenn. May 3, 2013), amended in part, No. 3:10-CV-1230, 2013 WL 3976627 (M.D. Tenn. Aug. 2, 2013) (internal quotation marks omitted) (citing Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 321 (6th Cir. 2012)).

A plaintiff may establish a claim under the ADEA through the use of direct or indirect evidence. If a plaintiff can support her claim with direct evidence of age discrimination, she must prove by a preponderance of the evidence "that age was the 'but for' cause of the challenged employer decision." Geiger v. Tower Auto., 579 F.3d 614, 621 (6th Cir. 2009) (quoting Gross v. FBL Financial Svcs., Inc., 557 U.S. 167, 176 (2009). If using indirect evidence, the familiar McDonnell Douglas burden-shifting framework applies. Yeschick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012). A plaintiff using indirect evidence "must show that (1) she was a member of a protected class; (2) she was subject to an adverse employment action; (3) she was qualified for the position held; and (4) she was replaced by a younger worker." Newcomb, 2013 WL 1874257, at *9 (citing Hale v. ABF Freight Sys., Inc., 2012 WL 5259156, at *8 (6th Cir. Oct.25, 2012). "Once a plaintiff satisfies his or her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action." Allen v. Highlands Hosp. Corp., 545 F.3d 387, 394 (6th Cir. 2008) (quoting Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir.1998)). "If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination." Id.

Crucially, both the direct evidence and indirect evidence analyses focus on something that is noticeably absent here: an adverse employment decision. To support a claim of discrimination a Plaintiff must show a "materially adverse change in the terms of her

employment." White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 791 (6th Cir. 2004) (en banc) (quoting Kocsis v. Multi–Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996)). This includes actions such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Kocsis, 97 F.3d at 886.

It seems that Plaintiff seeks to characterize the classroom switches, poor performance evaluations, and POA as adverse actions. Yet not even a transfer in jobsites qualifies as a materially adverse action. See Howard v. Magoffin Cnty. Bd. of Educ., 830 F. Supp. 2d 308, 315 (E.D. Ky. 2011) (declining to count a teacher's transfer to a new school as an adverse employment action where the teacher "maintained the same position with the same salary and benefits and the same job description."), aff'd, No. 12-5503, 2013 WL 362806 (6th Cir. Jan. 31, 2013). If switching schools does not qualify as an adverse action, then a transfer within the same building certainly does not, especially when there were no other changes to the terms and conditions of Plaintiff's employment. Similarly "a negative employment evaluation does not rise to this level unless it significantly impacts an employee's wages or professional advancement." Blizzard v. Marion Technical Coll., 698 F.3d 275, 290 (6th Cir. 2012) (internal quotation marks omitted) (citing James v. Metro. Gov't of Nashville, 243 Fed. App'x. 74, 79 (6th Cir. 2007). The poor performance evaluations and POA stated deficiencies in Plaintiff's job performance and set forth a plan for improvement, but do not mention compensation, advancement, or any other aspect of Plaintiff's employment. Moreover, the evaluation and remediation of Plaintiff's teaching was required by Tennessee law. While perhaps upsetting to Plaintiff, none of Defendant's conduct constitutes an adverse employment action.

Without a materially adverse employment action, there is no basis for a claim of age discrimination.[2]  Accordingly, Plaintiff's ADEA claim also fails.

**D.     Retaliation**

Plaintiff also checked the retaliation box on her EEOC charge and mentions retaliation in passing in her court filings.  Plaintiff does not, however, elaborate on which of the alleged facts give rise to a claim of retaliation.  The Sixth Circuit "has noted that the 'essence' of a retaliation claim 'is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct.'"  Thaddeus–X v. Blatter, 175 F.3d 378, 386–87 (6th Cir. 1999) (en banc) (citing Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 371 (6th Cir. 2007), abrogated on other grounds, Lewis v. Humboldt Acquisition Corp., 681 F.3d 312 (6th Cir. 2012)).

Dr. Norman has arguably engaged in protected activity insofar as she alerted Defendant to her disability, sought and received at least one accommodation, and filed an EEOC charge.  However, the lack of an adverse employment action again precludes her claim.  Even if any of the conduct alleged by Plaintiff constituted an adverse action, which it does not, Plaintiff has not presented any evidence about how such conduct is causally connected to her protected activity.  Where the evidence on a retaliation claim is so lacking, summary judgment is appropriate.  See Franklin v. Tennessee Dep't of Transp., No. 3-12-0653, 2013 WL 2897944, at *8 (M.D. Tenn. June 13, 2013) ("The Plaintiff has not shown any evidentiary basis supporting a claim of retaliation.  Indeed, the Court cannot even determine from the Plaintiff's allegations what protected activity he contends that he engaged in or what exactly he alleges to have been any act

---

[2] To the extent Plaintiff also alleges a general disability discrimination claim under the ADA, something which is not entirely clear based on her filings, the lack of an adverse employment action is also fatal to that claim.  See Whitfield v. Tennessee, 639 F.3d 253, 259 (6th Cir. 2011).

11

of retaliation. As such, he fails to satisfy even his prima facie burden for a retaliation claim, and the Defendant is entitled to summary judgment on this claim.").

**E.     State Law Claims**

Plaintiff also brings claims under the THRA. The applicable statute of limitations, Section 4-21-311, provides that "[a] civil cause of action under this section shall be filed . . . within one (1) year after the alleged discriminatory practice ceases." Unlike claims brought under federal law, the THRA "one year limitations period for bringing a direct court action *is not tolled* while administrative charges are pending with the THRC or the EEOC." Artis v. Finishing Brands Holdings, Inc., No. 13-1090, 2015 WL 1268027, at *24 (W.D. Tenn. Mar. 19, 2015) (emphasis added) (citing Burnett v. Tyco Corp., 932 F. Supp. 1039, 1044 (W.D. Tenn. 1996)). Plaintiff filed this action on December 11, 2012 and therefore the state law claims encompass only those events which occurred after December 11, 2011. Plaintiff does not name any events occurring after that date and in fact retired soon thereafter. Because Plaintiff's hostile work environment claim fails, there is no basis for applying the continuing violation theory. Thus, Plaintiff's state law claims are time-barred.

## IV. CONCLUSION

Accordingly, Defendant's motion for summary judgment (Docket No. 13) will be granted with respect to all of Plaintiff's claims. This action will be dismissed with prejudice.

An appropriate Order shall enter.

It is so ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE